Statement.
MONROE, J.
Plaintiff alleges that he is the owner of a tract of land containing 639 acres, more or less, “situated • at' the northeast point of Jones’ Island, * * * described and better known as section 37, T. 8 S., R. 8 E., section 37, T. 9 S., R. 8 E., lots 1 and 2, section 41, T. 8 S., and section 38, T. 9 S., R. 9 E., in the Greensburg Land District, parish of Tangipahoa”; that he entered upon and has possessed and owned the same, exclusively, since the year 1866; and that he has resided, paid taxes, buried his dead thereon, and has improved the same, all with a view of establishing permanent possession and ownership. He “further alleges that he did, on or about five years later, further acquire, by purchase, the aforesaid described property, from Robert C. Preston, the owner thereof, to further quiet his title in and to said property, * * * that, in order to further quiet his aforesaid title, * * * he purchased from Hypolite Mixon, * * * all of the aforesaid described property which he had purchased at tax sale made by R. F. Mix, sheriff, * * * May 30, 1903.” He further alleges that Dr. T. Nagel, representing himself to be the agent of the heirs of Alexander Bookter, Jr., and *982 Isaac T. and Woodruff Preston, have been, and are, slandering his said title, and have thereby damaged him to the extent of $3,000, and he prays that they and “all other persons claiming to be the owners of the aforesaid described property,” be cited, and that he have judgment decreeing him to be the owner théreof, quieting him in his title and possession, and awarding him the amount ■stated, as damages.
Nagel and the Prestons excepted .to the .jurisdiction of the court, ratione personae, and also interposed exceptions of vagueness and no cause of action, and, whilst those exceptions were pending, an intervention was filed by Caroline L. Hoey, Harmon Hoey, Wyman Hoey, Marion Hoey, wife of G. W. Stem, Elizabeth Hoey, wife of C. B. Fisher, Cornelius Hoey, Agnes Hoey, wife of-r Ballard, and Mary 1-Ioey, wife of-Hall, who allege that they acquired the land in question “by inheritance from their deceased father, John Hoey,” who purchased same, with J. O. Pierson, from Frank Preston, administrator of the late Isaac Trimble Preston, by act before Robert J. Kerr, notary, June 22,1853. Interveners further allege that their father acquired the interest of said Pier-son, and they pray that the parties, plaintiff and defendant, be cited, and that they have judgment maintaining their title. Barbier, Nagel, and the Prestons excepted to this intervention on various grounds, and Barbier, eventually, pleaded the general issue. Nagel also filed a general denial to both the original petition and the intervention, and, later, filed an amended answer in which he alleges that the land in question had been granted by the United States government to Alexander Bookter, or heirs, and belongs to his widow, Mrs. Emma Lamb Bookter, and his two daughters, Mrs. W. J. Weir and Mrs. G. L. Mitchell. The Prestons, though .their exceptions were overruled, do not appear to Rave answered either the petition or the intervention, and no default was entered against them. The trial proceeded, however, and, after the evidence or most of it had been offered, a suit was instituted by Mrs. Francis Gillespie Bookter, wife of W. J. Weir, and Mrs. Eddie Garnett Bookter, widow of G. L. Mitchell, in which they allege that they are the owners of the land in dispute (having acquired the same as the heirs-of their father, Alexander Bookter, Jr.), and pray that Barbier be cited and enjoined from depredating thereon, and that they have judgment maintaining their title. That being the situation, the court rendered judgment, in the suit of Barbier v. Nagel et al., as follows:
“This cause was tried and taken under advisement, and the evidence being in favor of the defendant and against the plaintiff, and for the written reasons on file, it is * * * decreed that Dr. T. Nagel, I. T. Preston and Woodruff Preston, defendants, have judgment * * * rejecting plaintiff’s demand for damages. It is further * * * decreed that the case, as between Henry Barbier, plaintiff, and Caroline Hoey et als., interveners, be returned to the trial docket, in order that the case entitled Mrs. Francis Gillespie Bookter, wife of W. J. Weir et ais., v. Henry Bookter No. 955, * * * may be, and is, hereby consolidated with this cause, for the purpose of trial and judgment, to the end that the contentions of these parties and the rights of each may be determined, at the same time, contradictorily with each other. It is further * * * decreed that Henry Barbier, plaintiff, pay all costs of the main demand. Done, read, and signed in open court, this 9th day of January, 1907.
“[Signed] Clay Elliot, District Judge.”
There was some objection to the judgment so rendered, but no one appealed from it. Barbier and the interveners (Hoey) filed answers to the petition of the Bookter heirs, but, save that I. T. Preston testified under commission, neither Nagel nor the Prestons made any further appearance in the case, and the Bookter heirs, at once, took a voluntary nonsuit. There was, then, some additional evidence adduced, after which, the court rendered judgment as follows, to wit:
“In favor of the heirs of John Hoey, deceased, to wit, Caroline L. Hoey, William Hoey, Harmon *984 Hoey, Wyman Hoey, Marion 1-Ioey, widow of G. W. Stem, deceased, Elizabeth Hoey, wife of O. B. Fisher, Cornelius Hoey, Agnes Hoey, wife of - Ballard, Mary Hoey, wife of - Hall, and against Henry Barbier, recognizing the said plaintiffs to be the owners and entitled to possession of the lands' described in their petition in this suit, to wit, * * * less that small portion of said' land which the defendant, Henry Barbier, has acquired by virtue of the prescription of 30 years, and which land so acquired by him is to be measured, commencing at the eastern point of Jones’ Island, running back westward, meandering both shores of the island far enough to include defendant’s family burial ground, his clearing, inclosures, fields, houses, pecan trees — the line of the western limit of those improvements being the line where his possessions ceased — the same is decreed to be the line between him and the plaintiff’s ; and it is decreed that Henry Barbier be quieted in his ownership and possession of the land above described, without damages, and without prejudice to the rights of the heirs of John Hoey, who have alleged in their petition that John Hoey acquired from J. O. Pierson the interest which said Preston formerly acquired with Hoey from the succession of Isaac Preston, * * * but for which interest the said Hoey heirs produced no title on the trial of this case. It is further * * * decreed that * * * Barbier pay costs,” etc.
From this judgment, Barbier alone appealed.
It is suggested that Caroline L. Hoey is the widow in community of John Hoey, and not the daughter and heir; that, of the nine children and heirs of said Hoey, two — John 1-Ioey and Mrs. Ballard — are dead, and are unrepresented in this suit, and that John Hoey acquired from Frank Preston, administrator of the estate of Isaac T. Preston, only an undivided two-thirds interest in the tract of land purchased by him (with Joseph Ogden Pierson, who purchased the other one-third), which is described as—
“a certain tract of land * * * on Jones’, or Preston’s Island, in the Pass of Manshac, being the west end of said island, and containing 040 acres, bounded by Lake Maurepas and the North and South Passes of Manshac and land belonging to the estate of said Isaac T. Preston. * * * Being the same property which was donated by Congress, and confirmed to Alexander L. Bookter, by certificate number 99, granted by Samuel F. Reynolds, register, and William Hinchen, receiver, of St. Helena Land District, and which was acquired by said Isaac T. Preston from the heirs bf said Bookter by act of sale and compromise, recorded in the office of' the judge of the parish of Livingston, and for which he obtained an order of survey from the Surveyor General of the United States on the 6th October, 1846.”
Opinion.
The facts being as stated, it is said that' the interveners now before the court can,, under no circumstances, recover more than Vo of % of % of the property claimed by them. Counsel for the interveners argue that the error, committed in describing the-widow of John 1-Ioey as his heir, is immaterial, and that she should be permitted to recover as widow in community.
Whilst, however, our practice is fairly liberal, we do not think that such a concession could, reasonably, be granted. Neither the-existence nor the rights of a widow in community have even been put at issue in the case, and there is no prayer in the pleading-with reference to either. On the contrary, the judgment prayed for and rendered deals, exclusively with the rights of the heirs of John Hoey, and include the lady shown to be his wife as one of his heirs at law. Hoey died about 1865. Whether his widow has, retained any interest which she may then have had in the property in dispute is a question which was not presented to the district court, and was not considered by that tribunal ; and, whether, if such question had been presented, Barbier (as defendant in the petitory action) would have set up a defense which was not urged as against the heirs of 1-Ioey, we have no means of knowing, and do, not feel called on to speculate. Beyond that, and pretermitting the question, whether, considering Barbier merely as a trespasser, the evidence of title exhibited by interveners i» sufficient, in the absence of any order of court or commission to the sheriff, to authorize recovery, there is a further difficulty which strikes at the foundation of their whole claim. It will be observed that the property referred *986 -to in the deed from Prank Preston, administrator, to Hoey and Pierson is described as:
“A certain tract of land * * * on Jones’, ■or Preston’s, Island * * * being the west end of said island, * * * bounded by Lake Maurepas and the North and South Passes of Manshac and land belonging to the estate of the said Isaac T. Preston.”
The land here in controversy, however, constitutes the east end of the island, and has, say, four miles lying between it and Lake Maurepas; and Isaac T. Preston, the author in title of John 1-Ioey, owned the one end as well as the other, and believed that the Bookter claim was properly located on the west end.
Thus, on June 25, 1824, Bookter obtained an order of survey (based on certificate No. 99) reading:
“To begin at the mouth of the North Pass and run up said pass to such a distance that a line •drawn thence south to the Pass of Manshac will include 640 acres and no more.”
This order contains the indorsement:
“Oert. No. 99. Order of survey to Alexander Bookter, Jr., for 640 acres; lot of John Mink, ■ Jones’ Island. Transferred by the heirs of Alexander Bookter to Isaac Preston.
“Sec. T. 8 S., R. 8 E.
“T. 8 S., R. 9 E.”
On November 12, 1835, however, Isaac T. 'Preston addressed a communication to the register and receiver of the St. Helena Land Office in regard to different certificates and • surveys in which he was interested, and, among others, the certificate which he had acquired from the heirs of Bookter, concerning which he wrote as follows:
“I beg leave, also, to call your attention to the order of survey in favor Alexander Bookter, by purchase from John Mink, on Jones’ Island. It directs the survey to commence at the entrance of the North Pass and run up, for quantity, conflicting exactly with the claim located for William Hinchen. The survey should commence at the junction of the North Pass and Lake Maurepas and run down, for quantity. 'The word ‘down’ should be substituted in the order for the word ‘up,’ which correction I request you to make and send me a copy of the order of survey, to be executed, and to mark it, -accordingly, on your map.”
On March 4, 1846, Preston executed an act whereby he sold to L. Boyer certain land described as follows, to wit:
“1,280 acres * * * situated lying and being on the Island called Preston’s Island in the Pass Manshac, * * * being 640 acres on the east end, already surveyed, which the said seller acquired by purchase from Thomas Green Davidson by act passed before the late William Boswell,_notary public, on the 25th day of January, 1835, and 640 on the west end, donated by Congress, and confirmed to Alexander Bookter by certificate No. 99, and which was acquired by the said Preston from the heirs of said Bookter by acts of sale and compromise recorded in the office of the judge of Livingston parish, and for which he obtained an order of survey from the Surveyor General of the United States on the 6th of October, 1886.”
The sale so made was abrogated by authentic act, between the same parties, before E. Barnett, notary, of date April 14, 1847, but, from the language -which has been italicized (by the court), taken in connection with the description of the land, it seems clear that Preston’s request, of November 12, 1835, had been complied with, and that the Bookter certificate had been located, or, at least, that Preston believed that it had been located, on the west end of the island, and that another claim, referred to as “already surveyed,” had been located on the east end; and this impression is confirmed by 'the language contained in the deed (of June 22, 1853) from Prank Preston, administrator, to I-Ioey and Pierson, which, after describing the tract sold, “as being the west end of said island,” and as “being the same property which was donated by Congress and confirmed to Alexander L. Bookter, by certificate No. 99,” continues, “and which was acquired by said ■Isaac T. Preston from the heirs of said Bookter, * * * and for which he obtained an order of survey from the Surveyer General of the United States on the 6th of October, 1846.” (It being evident that, for 1846, we should read, 1836, as in the sale to Boyer, of March 4, 1846.)
Under the circumstances as thus stated, *988 and in view of the facts: That Isaac T- Preston owned both ends of the island; that he considered that he had bought the east end from Davidson and the west end from Booster ; that his administrator sold the property, as acquired from Booliter, as the west end, and as bounded, in part, by Lake Maurepas; and that Lake Maurepas is not within four miles of the east end, which is near to Lake Pontchartrain — we conclude that interveners have exhibited no title to any part of the land here in dispute; which constitutes the east end of the island. Upon the other hand, we concur with the judge a quo in the opinion that plaintiff, Bar bier, has failed to establish title, by prescription or otherwise, to any more of the land than he has actually cleared or improved, and that, in so far as he is concerned, the judgment appealed from is correct, save as to the matter of costs.
It is therefore ordered, adjudged, and decreed that, in so far as the judgment appealed from decrees the opponents, the heirs of John Hoey, to be the owners and entitled to the possession of the land described in their petition and condemns the plaintiff I-Ienry Bar-bier to pay costs, said judgment be and the same is annulled, avoided, and reversed, and it is now adjudged that the demand of said opponents be rejected and dismissed, as in case of nonsuit. It is further decreed that, in so far as said judgment maintains the plaintiff, Barbier, in the title and possession asserted by him, the same be, and is hereby, affirmed; the opponents and appellees to pay the costs in both courts.